**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| BILLIE JO DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV432 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Billie Jo Davis, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 10, 14; see also Docket Entry 11 (Plaintiff's Memorandum); Docket Entry 15 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

**I. PROCEDURAL HISTORY**

Plaintiff applied for DIB, alleging an onset date of December 6, 2010. (Tr. 166-67.) Upon denial of that application initially (Tr. 65-84, 102-05) and on reconsideration (Tr. 85-101, 111-18), Plaintiff requested a hearing de novo before an Administrative Law

Judge ("ALJ") (Tr. 119-20).[1]   Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing.  (Tr. 37-64.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act.  (Tr. 13-30.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 10-12, 262-64), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1.   [Plaintiff] last met the insured status requirements of the [] Act on December 31, 2015.

2.   [Plaintiff] did not engage in substantial gainful activity during the period from her [amended] alleged onset date of September 28, 2012 through her date last insured of December 31, 2015.

3.   Through the date last insured, [Plaintiff] had the following severe impairments: irritable bowel syndrome (IBS); gastroesophageal reflux disease (GERD); obstructive sleep apnea; pancreatitis; migraine headaches; sinusitis; cervical and lumbar radiculopathy; history of cervical fusion; bipolar disorder; and posttraumatic stress disorder (PTSD).

.  .  .

4.   Through the date last inured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

.  .  .

5.   .  .  .  [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform a range

---

[1] Prior to the hearing before the ALJ, Plaintiff amended her onset date to September 28, 2012.  (See Tr. 16, 175.)

of light work . . . . She can occasionally climb stairs and ramps. She can never climb ropes, ladders or scaffolds. She can occasionally bend, balance, crouch, stoop, kneel, and crawl. She can frequently finger and feel with the bilateral upper extremities. She must avoid concentrated exposure to extreme temperatures, pulmonary irritants and workplace hazards. She requires simple, routine tasks involving no more than simple, short instructions and simple work-related decisions with few work place changes, and occasional contact with supervisors, co-workers and the public. She requires the opportunity to alternate between sitting and standing every 2 hours at the workstation, with standing and walking a total of 4 hours in an 8-hour workday.

. . .

6. Through the date last insured, [Plaintiff] was unable to perform any past relevant work.

. . .

10. Through the date last insured, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed.

. . .

11. [Plaintiff] was not under a disability, as defined in the [] Act, at any time from September 28, 2012, the amended alleged onset date, through December 31, 2015, the date last insured.

(Tr. 18-30 (bold font and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely

limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).
Plaintiff has not established entitlement to relief under the
extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead,
the Court "must uphold the factual findings of the ALJ if they are
supported by substantial evidence and were reached through
application of the correct legal standard." Hines, 453 F.3d at 561
(internal brackets and quotation marks omitted).  "Substantial
evidence means 'such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion.'" Hunter v. Sullivan,
993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402
U.S. 389, 401 (1971)).  "It consists of more than a mere scintilla
of evidence but may be somewhat less than a preponderance." Mastro
v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal
quotation marks omitted).  "If there is evidence to justify a
refusal to direct a verdict were the case before a jury, then there
is substantial evidence." Hunter, 993 F.2d at 34 (internal
quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not
undertake to re-weigh conflicting evidence, make credibility
determinations, or substitute its judgment for that of the [ALJ, as
adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal

brackets and quotation marks omitted).  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)."  Id. at 179 (internal quotation marks omitted).  "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]  "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational

_____

[2]  The Act "comprises two disability benefits programs.  [DIB] provides benefits to disabled persons who have contributed to the program while employed.  The Supplemental Security Income Program provides benefits to indigent disabled persons.  The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical."  Craig, 76 F.3d at 589 n.1 (internal citations omitted).

evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro,

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in
(continued...)

### B.  Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ's failure to properly account for [Plaintiff's] moderate limitations in concentration, persistence, [or] pace [('CPP')] in her RFC is harmful error and reversal and remand for further consideration is necessary" (Docket Entry 11 at 5 (bold font and single-spacing omitted)); and

2) "[t]he ALJ's failure to conduct a proper function-by-function analysis of [Plaintiff's] impairments and failure to provide a logical bridge between the evidence in the record, [the ALJ's] conclusions regarding [Plaintiff's] credibility and [the ALJ's] RFC findings is error as a matter of law; alternatively, it prevents the ALJ's conclusions regarding [Plaintiff's] RFC from being supported by substantial evidence" (id. at 12 (bold font and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision.  (Docket Entry 15 at 3-20.)

---

[5] (...continued)
the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## 1. CPP

In Plaintiff's first assignment of error, she contends that "[t]he ALJ's failure to properly account for [Plaintiff's] moderate limitations in [CPP] in [the ALJ's] RFC is harmful error and reversal and remand for further consideration is necessary." (Docket Entry 11 at 5 (bold font and single-spacing omitted).) More specifically, Plaintiff maintains that the United States Court of Appeals for the Fourth Circuit in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), indicated its agreement with "'other circuits that an ALJ does not account for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work'" (Docket Entry 11 at 6 (quoting Mascio, 780 F.3d at 638) (internal quotation marks omitted)), because "'the ability to perform simple tasks differs from the ability to stay on task . . . [and] [o]nly the latter limitation . . . would account for a claimant's limitation in [CPP]'" (id. at 8 (quoting Mascio, 780 F.3d at 638)).  Plaintiff asserts that the RFC's "limitations for dealing with supervisors, co-workers and the public are social in nature," and that "limitations regarding [the] skill level of work tasks, work-related decisions and work-place changes are consistent with unskilled work activity but do not specifically account for [Plaintiff's] moderate limitations in [CPP]."  (Id. at 6.) According to Plaintiff, "[t]he ALJ's error is especially important . . . where there is evidence to suggest that [Plaintiff] would

have significant limitations in her ability to maintain her concentration and persistence or sustain an adequate pace for competitive work activity secondary to her combined impairments." (Id. at 10 (citing, inter alia, Tr. 1002 (reflecting treating neurologist Dr. Andreas Runheim's opinion that Plaintiff would have severe limitations in her ability to maintain CPP as a result of her pain)).) Plaintiff has not established an entitlement to relief.

The Fourth Circuit has indeed held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638. However, that court also allowed for the possibility that an ALJ could adequately explain why moderate limitation in CPP would not result in any limitation in the RFC. Id. A neighboring district court had occasion to discuss this very point:

> Mascio does not broadly dictate that a claimant's moderate impairment in [CPP] always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . . An ALJ may account for a claimant's limitation with [CPP] by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (magistrate judge's recommendation adopted by

district judge) (unpublished) (emphasis added); see also Hutton v. Colvin, No. 2:14-CV-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015) (unpublished) (finding reliance on Mascio "misplaced," because ALJ "gave abundant explanation" for why unskilled work adequately accounted for claimant's moderate limitation in CPP, by highlighting the claimant's daily activities and treating physicians' opinions). Here, the ALJ's decision provides a sufficient explanation as to why restrictions to simple, routine tasks involving no more than simple, short instructions and simple work-related decisions, with few work place changes and occasional contact with co-workers, supervisors, and the public (see Tr. 21) sufficiently accounted for Plaintiff's moderate deficit in CPP.

First, the ALJ discussed Plaintiff's testimony regarding her mental symptoms, but found her statements "not entirely credible for the reasons explained in th[e] decision." (Tr. 22.)[6] As explained in the context of Plaintiff's second assignment of error, the ALJ did not err and provided substantial evidence to support her assessment of Plaintiff's subjective symptom reporting.

Second, the ALJ summarized Plaintiff's medical treatment, making the following, pertinent observations:

- At a March 20, 2014, visit with Daymark, Plaintiff "reported Seroquel was helping her

---

[6] Notably, beyond stating that her medications caused her to feel sleepy (see Tr. 46-47, 49-53), Plaintiff did not testify to experiencing any difficulties concentrating or maintaining pace during the hearing (see Tr. 42-56), even when her counsel specifically asked Plaintiff to describe the mental health symptoms that kept her from being able to work (see Tr. 53-54).

significantly[,]" that "she was sleeping well with the nighttime dose[,]" that she "felt her mood had been level[,]" and that she "had no complaints" (Tr. 24; <u>see also</u> Tr. 878);

- "On April 2, 2015, [Plaintiff] followed up at Daymark and stated she has been doing well since her visit five months prior[,]" and, "[o]n mental status examination, she was cooperative, appeared at ease with good eye contact, speech was normal, mood was euthymic, affect was full range, and she was alert and oriented times four" (Tr. 25; <u>see also</u> Tr. 1004);

- "Follow up notes show [Plaintiff's] pancreatitis improved with medications" and Plaintiff's treating gastroenterologist "reported [Plaintiff's] pancreatitis, IBS and GERD were stable" (Tr. 26; <u>see also</u> Tr. 553-69, 956-62);

- "With medications, [Plaintiff] . . . reported a decrease in the frequency of her migraine headaches" (Tr. 26; <u>see also</u> Tr. 517-48, 940-55, 1047-58);

- Plaintiff's treating neurologist "administered injections for radiculopathy, to which [Plaintiff] responded well and [which] she reported were quite effective" (Tr. 26; <u>see also</u> Tr. 940-55, 1047-58).[7]

Third, the ALJ discussed and weighed the opinion evidence as it related to Plaintiff's ability to function mentally. (<u>See</u> Tr. 27-28.) Notably, the ALJ gave "significant weight" to the opinions of the state agency psychological consultants (Tr. 28), who each found that, notwithstanding moderate limitation in CPP (<u>see</u> Tr. 75, 94), Plaintiff "<u>retain[ed] the capacity for [CPP] for 1-3 step</u> <u>instructions for 2 hour periods over an 8 hour day throughout a</u>

---

[7] Plaintiff alleged that, in addition to the adverse impact on her ability to concentrate from her mental impairments and medication, pain from her radiculopathy, migraine headaches, and pancreatitis "also negatively impact[ed] her ability to focus and concentrate." (Docket Entry 11 at 11.)

week" (Tr. 80, 98 (emphasis added)), and could perform SRRTs (Tr. 76, 94, 99).[8]

Under these circumstances, the ALJ adequately explained why restrictions to simple, routine tasks involving no more than simple, short instructions and simple, work-related decisions with few work place changes and occasional contact with co-workers, supervisors, and the public (see Tr. 21) sufficiently accounted for Plaintiff's moderate limitation in CPP. See Sizemore v. Berryhill, 878 F.3d 72, 81 (4th Cir. 2017) (rejecting the plaintiff's argument under Mascio where ALJ relied on opinions of consultative examiner and state agency psychologist that, notwithstanding moderate deficit in CPP, the plaintiff could sustain attention sufficiently to perform SRRTs).

## 2. RFC

In Plaintiff's second and final assignment of error, she asserts that "[t]he ALJ's failure to conduct a proper function-by-

---

[8] The state agency psychological consultant at the initial level of review also included a restriction to a "low production environment" in the mental RFC (Tr. 76), and the consultant at the reconsideration level opined that Plaintiff could "perform[] SRRTs in a non-production role [with] low social demands" (Tr. 94, 99). The ALJ captured the requirement for low social demands by restricting Plaintiff to only occasional interaction with co-workers, supervisors, and the public (see Tr. 21); however, despite giving "significant weight" to the state agency psychological consultants' opinions (see Tr. 28), the ALJ did not include a restriction to a low production environment or a non-production role in the RFC (see Tr. 21). Neither Plaintiff nor the Commissioner addressed this apparent inconsistency between the consultants' opinions and the RFC in their briefing to this Court. (See Docket Entries 11, 15.) The Court thus need not further address that subject. See generally United States v. Zannino, 895 F.2d 1, 17 (1sr Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever holds its peace."); Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) (unpublished) (Schroeder, J.) ("A party should not expect a court to do the work that it elected not to do.").

function analysis of [Plaintiff's] impairments and failure to provide a logical bridge between the evidence in the record, [the ALJ's] conclusions regarding [Plaintiff's] credibility and [the ALJ's] RFC findings is error as a matter of law . . . [and/or] prevents the ALJ's conclusions regarding [Plaintiff's] RFC from being supported by substantial evidence." (Docket Entry 11 at 12 (bold font and single-spacing omitted).) Additionally, Plaintiff contends that the ALJ erred by assigning no weight to the opinions of Dr. Runheim, and by failing to adopt the handling restriction opined by state agency medical consultant Dr. Pamela Jessup. (Id. at 22-23.) Plaintiff's contentions fail as a matter of law.

a. Credibility Analysis

Plaintiff maintains that the ALJ erred in three respects in evaluating Plaintiff's credibility by (1) finding that Plaintiff's "activities of daily living were inconsistent with her allegations" (id. at 15 (citing Tr. 26)); (2) observing that Plaintiff "stopped working for reasons not related to the allegedly disabling impairments because she was fired" (id. at 17 (quoting Tr. 26)); and (3) drawing an adverse credibility inference from Plaintiff's "participation in a church trip to Stone Mountain in September 2012" (id. at 18 (citing Tr. 26)). None of those allegations has merit.

Social Security Ruling 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims,

1996 WL 374186 (July 2, 1996) ("SSR 96-7p"), as applied by the Fourth Circuit in Craig, 76 F.3d at 594-95, provides a two-part test for evaluating a claimant's statements about symptoms.[9] "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) . . . which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (quoting 20 C.F.R. § 404.1529(b)). Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities . . . shown by medically acceptable clinical diagnostic techniques") and laboratory findings ("anatomical, physiological, or psychological phenomena . . . shown by the use of medically acceptable laboratory diagnostic techniques"). 20 C.F.R. 404.1528.

Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the claimant's symptoms, as well as the extent to which they affect his or her ability to work. Craig, 76 F.3d at 595. In making that determination, the ALJ:

_____

[9] Applicable to ALJ decisions on or after March 28, 2016, the Social Security Administration superceded SSR 96-7p with Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *5 (Oct. 25, 2017) ("SSR 16-3p"). The new ruling "eliminat[es] the use of the term 'credibility' from . . . sub-regulatory policy, as [the] regulations do not use this term." Id. at *1. The ruling "clarif[ies] that subjective symptom evaluation is not an examination of the individual's character," id., and "offer[s] additional guidance to [ALJs] on regulatory implementation problems that have been identified since [the publishing of] SSR 96-7p," id. at *1 n.1. The ALJ's decision in this case predates the effective date of SSR 16-3p (see Tr. 30) and, thus, this Recommendation will apply SSR 96-7p to Plaintiff's argument regarding the ALJ's subjective symptom evaluation.

must take into account not only the claimant's statements
about her pain, but also all the available evidence,
including the claimant's medical history, medical signs,
and laboratory findings, any <u>objective medical evidence</u>
of pain (such as evidence of reduced joint motion, muscle
spasms, deteriorating tissues, redness, etc.), and any
other evidence relevant to the severity of the
impairment, such as evidence of the claimant's daily
activities, specific descriptions of the pain, and any
medical treatment taken to alleviate it.

<u>Id.</u> (internal citations and quotation marks omitted) (emphasis

added). "[A]llegations concerning the intensity and persistence of

pain or other symptoms may not be disregarded <u>solely</u> because they

are not substantiated by objective medical evidence." SSR 96-7p,

1996 WL 374186, at *6 (emphasis added). In other words, "the

absence of objective medical evidence supporting an individual's

statements about the intensity and persistence of pain or other

symptoms . . . must be considered in the context of all the

evidence." (<u>Id.</u>)

Plaintiff first takes issue with the ALJ's finding that

Plaintiff's "activities of daily living were inconsistent with her

allegations." (Docket Entry 11 at 15.) In that regard, Plaintiff

challenges the ALJ's reliance on Plaintiff's role as primary

caregiver of a teenage daughter to discount Plaintiff's credibility

(<u>see</u> Docket Entry 11 at 15 (citing Tr. 26)), noting that, "by the

date of the hearing[, Plaintiff's] daughter was in college and only

saw [Plaintiff] weekly" (<u>id.</u> (citing Tr. 42, 50)). According to

Plaintiff, "it is unclear how being the primary caregiver of a

teenage daughter would support a determination that [Plaintiff's]

impairments and limitations were not as severe as alleged or a finding that she was not disabled." (Id.)

A claimant's ability to care for others clearly constitutes a permissible area of inquiry and consideration for an ALJ in terms of the credibility of a claimant's statements regarding disability. The Social Security Administration's Function Report - Adult - Third Party forms ("Function Reports") ask individuals if the claimant takes care of anyone else and, if so, what kinds of activities the claimant can still perform for others. (See, e.g., Tr. 209, 228.) On Function Reports dated May 14, 2013, and October 4, 2013, Plaintiff's fiancé, Rickey Lee Kipp, indicated that Plaintiff cooked meals and cleaned for her daughter (see Tr. 208, 209, 228), prepared her daughter for school (see Tr. 226), and "ma[de] sure [her daughter] ha[d] a ride to where ever she need[ed] to be for school" (Tr. 228). That evidence possesses some tendency to show that, despite Plaintiff's impairments, she retained the mental and physical functional ability to perform a limited range of simple, light work. Moreover, the ALJ did not solely rely on Plaintiff's role as caregiver of her daughter, either to support the ALJ's decision to discount Plaintiff's credibility or in formulating Plaintiff's RFC.

Plaintiff's accusation that the ALJ "ignored or mischaracterized the information in [] Kipp's [Function] [R]eports that did not support her conclusions" falls short. (Docket Entry

11 at 15.)    The ALJ's discussion of Kipp's Function Reports consisted of the following:

> [Plaintiff] testified that she does not do any chores, but her 73-year-old retired mother does all of them. However, <u>her boyfriend reported otherwise</u>.
>
> . . .
>
> The [ALJ] has considered the [Function Reports] by [] Kipp and finds <u>his statements more accurately reflect [Plaintiff's] activities</u> and are given partial weight because [Plaintiff] has alleged numerous symptoms that are not supported by objective medical evidence. However, the [ALJ] gives little weight to [] Kipp's comments as to the severity of [Plaintiff's] impairments because he is biased as her boyfriend.

(Tr. 27 (emphasis added) (internal citations omitted).)  The ALJ's observation of the conflict between Plaintiff's testimony that she did not perform <u>any</u> housework, and Kipp's statements that Plaintiff did perform some chores, harmonizes with the record.  (<u>Compare</u> Tr. 50, <u>with</u> Tr. 208, 209, 210, 229; <u>see also</u> Tr. 573 (reflecting Plaintiff's August 29, 2013, report to consultative medical examiner Dr. Stephen Burgess that she can sweep, fold laundry, wash dishes, cook, dust, make beds, and clean).)[10]  Moreover, the ALJ

_____

[10] Plaintiff describes her statements throughout the record, as well as those of Kipp, regarding her ability to engage in daily activities (<u>see</u> Docket Entry 11 at 15-17), and then argues that "[g]iven th[at] evidence it is unclear where the ALJ found evidence to support her conclusion that [Plaintiff] has 'no problems with taking care of her personal needs, [] drives and prepares food, does light housework including vacuuming, cleaning, straightening up, dusting, sweeping, folding laundry, washing dishes, cooking, dusting and making beds, and watches television'" (<u>id.</u> at 17 (quoting Tr. 26)).  However, the ALJ cited to Kipp's Function Reports and Dr. Burgess's consultative examination (<u>see</u> Tr. 26 (citing Tr. 208-15, 226-34, 572-76)), all of which provide support for the finding in question.  To the extent other statements by Plaintiff exist in the record that conflict with the evidence cited by the ALJ, the ALJ resolved those conflicts, as the ALJ must do, and explained that she found that Kipp's "statements more accurately reflect[ed] [Plaintiff's] activities" (Tr. 27).

indicated that she had "careful[ly] consider[ed] [] the entire record" (Tr. 21 (bold font omitted)), and "'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in h[er] decision,'" <u>Reid v. Commissioner of Soc. Sec.</u>, 769 F.3d 861, 865 (4th Cir. 2014) (quoting <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1211 (11th Cir. 2005)).  Thus, Plaintiff has not shown that the ALJ ignored or mischaracterized any information in Kipp's Function Reports.

Next, Plaintiff disputes the ALJ's reliance on the fact that Plaintiff stopped working for reasons unrelated to her alleged disability to support the ALJ's adverse credibility finding.  (<u>See</u> Docket Entry 11 at 17 (citing Tr. 26).)  According to Plaintiff, "evidence that [Plaintiff] was fired in 2010" does not conflict with her allegation that her disability began on September 28, 2012, "since [Plaintiff] did not contend that she stopped working secondary to her impairments." (<u>Id.</u>)  Plaintiff's argument misses the mark.  On her Disability Report, Plaintiff indicated that she stopped working on December 6, 2010, "<u>[b]ecause of [her]</u> <u>conditions</u>," as well as because "[she] was fired," and reported that she "believe[d] [her] condition(s) became severe enough to keep [her] from working" on <u>December 6, 2010</u>.  (Tr. 189 (emphasis added).)  Although Plaintiff amended her onset date to September 28, 2012 (<u>see</u> Tr. 16, 175), she acknowledged that she did so, in

part, because of her collection of unemployment compensation after December 6, 2010 (see Tr. 175).

Plaintiff additionally faults the ALJ for "cit[ing] to [Plaintiff's] participation in a church trip to Stone Mountain in September 2012 as a piece of evidence that support[ed] that she was not as limited as would be expected, given her complaints of disabling symptoms and limitations." (Docket Entry 11 at 18 (citing Tr. 26).) In that regard, Plaintiff notes that the trip predated her amended onset date of September 28, 2012, as well as that she "reported an increase in pain and symptoms following the trip and that there [wa]s no further mention of [Plaintiff] taking any trips in the record." (Id.) As an initial matter, Plaintiff indicated that her trip to Stone Mountain took place on approximately September 9, 2012, which predates Plaintiff's amended onset date of September 28, 2012, by just 19 days. (See Tr. 923.) Plaintiff does not allege that she experienced a sudden exacerbation of her impairments between September 9 and 28, 2012, so as to render the ALJ's consideration of Plaintiff's participation in outdoor activities at a mountainous state park 19 days before her amended onset date improper. (See Docket Entry 11.) Moreover, although Plaintiff did allege pain following her outing to Stone Mountain, she complained of pain and swelling in her right foot that did not radiate to any other area, and did not

allege that the trip exacerbated any of the impairments for which she claims disability.  (See Tr. 923.)

Simply put, Plaintiff has not established prejudicial error with respect to the ALJ's analysis of Plaintiff's credibility.

b.  Logical Bridge Between Evidence and RFC

Plaintiff next maintains that "[t]he ALJ failed to build an accurate and logical bridge between [Plaintiff's] medical evidence . . . and [the ALJ's] RFC findings."  (Docket Entry 11 at 18 (internal quotation marks omitted).)  Plaintiff does not challenge as erroneous any of the ALJ's specific descriptions of Plaintiff's medical treatment, but rather lists objective medical findings and her own subjective complaints of symptoms regarding her cervical and lumbar radiculopathy, migraine headaches, pancreatitis, and IBS, that she believes show she suffered greater limitations than found by the ALJ in the RFC.  (See id. at 18-22.)  However, Plaintiff misinterprets this Court's standard of review.  The Court must determine whether substantial evidence, defined as "more than a mere scintilla of evidence but may be somewhat less than a preponderance," Mastro, 270 F.3d at 176 (brackets and internal quotation marks omitted), supported the ALJ's findings and not whether other record evidence weighs against the ALJ's findings, see Lanier v. Colvin, No. CV414-004, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015) (unpublished) ("The fact that [the p]laintiff disagrees with the ALJ's decision, or that there is other evidence

in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence.").

Here, the ALJ supported with substantial evidence her findings with regard to the impact on the RFC of Plaintiff's cervical and lumbar radiculopathy, migraine headaches, pancreatitis, and IBS:

> [Plaintiff] has a history of IBS, GERD, and pancreatitis for which she takes medications as prescribed by her gastroenterologist. Follow up notes show [Plaintiff's] pancreatitis improved with medications. Thereafter, [her treating gastroenterologist] reported her pancreatitis, IBS and GERD were stable. . . . [Plaintiff] has cervical and lumbar radiculopathy for which she takes medications, and migraines. With medications, she also reported a decrease in the frequency of her migraine headaches. Dr. Runheim later administered injections for radiculopathy, to which she responded well and she reported were quite effective. On physical examinations, she did not appear to be in distress and no significant abnormalities were noted.

(Tr. 25-26 (internal citations omitted).) This analysis, along with the ALJ's preceding discussion of the medical evidence, confirms that substantial evidence supports the ALJ's RFC findings.

c.   Medical Opinion Evidence

Lastly, Plaintiff contends that the ALJ erred by assigning no weight to the opinions of treating neurologist Dr. Runheim, and by failing to adopt the handling restriction opined by state agency medical consultant Dr. Pamela Jessup. (Id. at 22-23.) Neither contention has merit.

The treating source rule does generally require an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. See 20 C.F.R.

§ 404.1527(c)(2) ("[T]reating sources . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference. The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. See 20 C.F.R. § 404.1527(c)(2)(ii). Moreover, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. See 20 C.F.R. § 404.1527(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590 (emphasis added).

In this case, on February 2, 2015, Dr. Runheim completed a Physical Capacities Evaluation (Tr. 998-1003), diagnosing Plaintiff with "lumbar [and] cervical radiculopathy, [CTS], [and] migraine headaches" (Tr. 998). Dr. Runheim opined that, as a result of those impairments, Plaintiff could lift and/or carry less than ten

pounds occasionally, had limited ability to operate foot controls (see Tr. 999), could stand, walk, and sit each for 30 minutes total in an eight-hour workday, could never climb, balance, stoop, kneel, crouch, or crawl, had limited ability to reach, handle, and finger (see Tr. 1000), and could only have limited exposure to extreme temperatures, wetness, humidity, noise, vibration, pulmonary irritants, and hazards (see Tr. 1001). In addition, Dr. Runheim opined that Plaintiff would need to change positions at irregular intervals, lie down or recline periodically, and take frequent or unscheduled breaks. (See Tr. 1003.) Dr. Runheim concluded that Plaintiff "is 100% disabled to [sic] all of the above diagnosis [and] medication side effects." (Tr. 1003.)

The ALJ discussed Dr. Runheim's proffered restrictions, and then assessed the opinions as follows:

> The [ALJ] accords no weight to this opinion because it is clearly an exaggeration of [Plaintiff's] condition. With these limits, [Plaintiff] would likely have been confined to bed. On August 26, 2015, office notes from the same practice show [Plaintiff] is exercising regularly, not sedentary, not feeling fatigued, has no breathing difficulty, has arthralgias in the bilateral legs and arms, but has no joint swelling or stiffness. She has normal movements of all extremities, with some gait and stance abnormality. She has had repeat lumbar epidural steroid injections and cervical trigger point injections and reports continued problems with her neck and low back, but states that previous injections have worked very well. She also reported reduced frequency of her migraines and denied bowel symptoms.

(Tr. 27 (internal citations omitted).) Plaintiff challenges the ALJ's reliance on Dr. Runheim's August 26, 2015, treatment note to

support the ALJ's rejection of Dr. Runheim's opinions, arguing that the ALJ "fail[ed] to mention that at the same office visit exam findings noted weakness of the bilateral upper and lower extremities, reduced sensation in a stocking-glove distribution, hypoactive deep tendon reflexes, mild sensory ataxia and abnormal gait" (Docket Entry 11 at 22 (citing Tr. 1048)), and "failed to explain why [such findings] did not support any of Dr. Runheim's [opinions]" (id. at 22-23).

Plaintiff again misinterprets this Court's standard of review. The Court must determine whether the ALJ supported her decision to reject Dr. Runheim's opinions with substantial evidence, and not whether other record evidence weighs against the ALJ's analysis, Lanier, 2015 WL 3622619, at *1 ("The fact that [the p]laintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence."). The ALJ permissibly rejected Dr. Runheim's opinions as inconsistent with his own treatment notes (see Tr. 27), and Plaintiff does not specifically challenge the ALJ's above-quoted description of Dr. Runheim's findings (see Docket Entry 11 at 22-23). Moreover, the ALJ did not simply cherry-pick findings from Dr. Runheim's August 26, 2015, treatment note that supported the ALJ's findings – the ALJ described Dr. Runheim's objective findings both that reflected Plaintiff's pain and some degree of limitation (i.e., arthralgias

and abnormal gait and station), and those that did not (i.e., no joint swelling or stiffness and normal movements of all extremities).  (See Tr. 27.)

Next, Plaintiff asserts that "[t]he ALJ also committed error by assigning partial weight to the opinion of Dr. Jessup, . . . but failing to adopt her RFC findings that would limit [Plaintiff's] ability to handle objects."  (Docket Entry 11 at 23 (citing Tr. 28) (internal citations omitted).)  Plaintiff contends that "this is a relevant limitation since a limitation on handling could negatively impact [Plaintiff's] ability to perform the jobs identified by the VE."  (Id.)  Plaintiff's assertion falls short.  As the ALJ accorded Dr. Jessup's opinion only "partial weight" (Tr. 28), the ALJ labored under no obligation to adopt all of Dr. Jessup's restrictions in the RFC.  Moreover, even if the ALJ had adopted Dr. Jessup's restriction to frequent handling (see Tr. 96-97), two of the three jobs cited by the VE as available in significant numbers in the national economy, Mail Clerk and Marker (see Tr. 59-60), would remain appropriate because they each require no more than frequent handling, Dictionary of Occupational Titles ("DOT"), No. 209.687-026 ("Mail Clerk"), 1991 WL 671813 (4th ed. rev. 1991); DOT, No. 209.587-034 ("Marker"), 1991 WL 671802.

In short, Plaintiff has not established a basis for relief arising out of the ALJ's RFC determination.

### III.  CONCLUSION

Plaintiff has not established an error warranting reversal or remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Summary Judgment (Docket Entry 10) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

August 16, 2018